IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

By mgarcia at 2:29 pm, Jan 29, 2020

| | |
|---|---|
| MARIO SHANE DUNCAN, | |
| Petitioner, | CIVIL ACTION NO.: 5:19-cv-45 |
| v. | |
| PATRICK GARTLAND, | |
| Respondent. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Mario Duncan ("Duncan"), who is currently housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Duncan filed a Response. Docs. 8, 10. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion, **DENY** Duncan's Petition, **DIRECT** the Clerk of Court to enter to appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Duncan *in forma pauperis* status on appeal.

**BACKGROUND**

Duncan asserts he is a citizen of the Bahamas and a frequent visitor to the United States. Doc. 1-1 at 1. Duncan states he was admitted to the United States on December 17, 2015 at Hartsfield International Airport on a visitor's visa (B-2). Id. Duncan contends he was arrested in December 2017 and charged under state law based on false accusations. Id. at 5. Duncan alleges he was taken into ICE custody on January 12, 2018 due to his B-2 visa having expired. Id. Duncan avers he has been in ICE's custody since that time because he cannot get his I-130

petition approved based on the pending criminal charges.  Id.  As relief, Duncan asks this Court to order ICE to release him from custody.  Doc. 1 at 7.

Respondent contends Duncan's B-2 visa did not allow him to remain in the United States after June 16, 2016, yet he remained in the country after that date without authorization.  Doc. 8 at 3.  Respondent notes Duncan was arrested on December 21, 2017 and charged in the Fulton County Superior Court with enticing a child for indecent purposes, a charge which remains pending.  Id.  Duncan was transferred to the Department of Homeland Security's ("DHS") custody on January 12, 2018 and had his first "master hearing" in immigration court on March 27, 2018, at which time Duncan informed the judge his wife filed an I-130 on his behalf.  Id.  The immigration judge continued Duncan's case to allow him to retain an attorney and to determine the status of the I-130 petition.  Id.  Since that time, Duncan has had 12 other hearings in immigration court, all of which have been continued because the I-130 application is incomplete.  Id.

Respondent contends ICE has submitted repeated requests to expedite and for status updates with the United States Customs and Immigration Services ("USCIS"), which in turn issued a notice of intent to deny Duncan's I-130 petition because Duncan and his wife failed to meet their burden.  Id. at 4.  On July 3, 2018, the immigration judge conducted a hearing and denied Duncan's request for bond pending a determination on the I-130 petition based on the judge's finding Duncan is a danger to society given the nature of Duncan's pending criminal charges.  Id.  Duncan did not appeal that decision.  Id.

Duncan contends the reason for his continued detention is the false allegation against him which led to his arrest.  Doc. 10 at 1.  Duncan also contends the information concerning the immigration proceedings is not correct or is not explained to him.  Id. at 2.  Duncan alleges he

2

has been detained for longer than a reasonable period of time and is entitled to a bond hearing. Id. at 3.

## DISCUSSION

**I.      Whether Duncan's Petition Should Be Denied**

Respondent asserts the Attorney General's decision to detain Duncan during the pendency of his removal proceedings is not reviewable in this Court. Doc. 8 at 4. Nonetheless, Respondent alleges Duncan was given the opportunity to be heard on whether he should be released on bond, the immigration judge declined to release Duncan on bond, and Duncan declined to exercise his right to appeal that decision. Id. at 5. Alternatively, Respondent states that, even if this Court had jurisdiction to review Duncan's detention, his detention comports with due process. Id. at 6. Respondent avers the "continued availability of adjustment" to his detention status is "fatal to any due process claim [Duncan] might raise." Id. at 7. In addition, Respondent maintains Duncan's detention, while lengthy, has not been unreasonably prolonged due to government inaction. Id. at 8.

Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(a), provides that, upon the Attorney General's warrant, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." During the pendency of this decision, the Attorney General may detain the alien or release the alien on bond or conditional parole. § 1226(a). In addition,

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

28 U.S.C. § 1226(e). In other words, "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has

3

made regarding his detention or release.'" Jennings v. Rodriguez, 138 S. Ct. 830, 841 (2018) (quoting Demore v. Kim, 538 U.S. 510, 516 (2003)).  In cases where an alien is detained, he can seek review of that detention with DHS and then by an immigration judge and can "secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap, 139 S. Ct. 954, 960 (2019) (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d), and then citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006))). "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings.  Section 1226(a) also permits the Attorney General to release those aliens on bond[]" in certain situations. Jennings, 138 S. Ct. at 846.

After Duncan was arrested by state authorities, he was transferred to DHS's custody on January 12, 2018.  Doc. 8-1 at 2.  DHS informed Duncan, upon service of a warrant for arrest of alien and notice of custody determination, he would remain in DHS's custody pending the final administrative determination of his case. Id. & at 12–15.  Duncan was also served with a notice to appear based on Duncan remaining in the United States on a visa overstay and charging Duncan as being subject to removal under the Immigration and Nationality Act. Id. at 2, 17–18.  After a series of continuances based on the pendency of Duncan's I-130 petition, an immigration judge denied Duncan bond on July 3, 2018 during a custody redetermination hearing, finding Duncan to be a danger to society due to the state charge of child molestation. Id. at 2, 27.  Duncan did not appeal this decision. Id. at 2.  After this custody redetermination hearing, Duncan has been granted several continuances. Id. at 3–5.  However, the USCIS issued a notice of intent to deny Duncan's I-130 petition on August 8, 2019, and, at the time Respondent filed

his Motion to Dismiss, no final administrative order has been entered in this case, though Duncan was scheduled for a master hearing on August 9, 2019. Id. at 5, 60.

The immigration judge's decision to deny Duncan bond was based on his finding, after a hearing, Duncan is a danger to society based on the state charges pending against him was within the discretion afforded under § 1226(a).[1] Thus, this Court cannot review this decision under § 1226(e).

In addition, Duncan has had a bond hearing, and he has the ability to administratively request adjustment to his bond—an option which he has pursued. 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."); Doc. 10 at 4, 7. The fact that Duncan was given a bond hearing, and redetermination of his initial bond determination remains available under 8 C.F.R. § 1003.19(e) undermines any due process claim Duncan could assert. Duncan's only due process challenge concerns the length of his detention under § 1226(a). Doc. 1 at 5; Doc. 10-1 at 1. Indeed, Duncan is not challenging "the adequacy of his initial bond hearing[]" and does not "allege unreasonable delay by the government." Borbot v. Warden Hudson Cty. Corr. Facility, 906 F.3d 274, 277, 277–79 (3d Cir. 2018) (outlining differences between § 1226(a) detention and § 1226(c) detention and bond hearings applicable to each statute and that the burden remains on the detainee at all times under § 1226(a)). Because

---

[1] Duncan's Response to the Motion to Dismiss makes reference to § 1226(c) detention, doc. 10 at 3–8, but that issue is not before the Court and, aside from Duncan's passing reference, there is nothing in the record indicating he is actually being detained under § 1226(c). Instead, the issue before the Court concerns Duncan's § 1226(a) detention. Doc. 8. Thus, Sopo v. U.S. Attorney General, 825 F.3d 1199 (11th Cir. 2016), *vacated on other grounds by* Sopo v. U.S. Attorney General, 890 F.3d 952 (11th Cir. 2018), is not applicable.

Duncan was provided adequate due process at in his initial bond hearing and redetermination remains available, the mere duration of his detention, without more, does not demonstrate any due process violation.[2] Id. at 279–80 (holding that detainee was not entitled to a second bond hearing under § 1226(a), despite lengthy detention, where detainee did not allege a constitutional defect in the first bond hearing).

The Court should **GRANT** Respondent's Motion to Dismiss and **DENY** Duncan's Petition.

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Duncan leave to appeal *in forma pauperis*. Though Duncan has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

---

[2] To the extent Duncan argues the burden should shift to the government to demonstrate that his continued detention is necessary, that argument fails. Even where prolonged detention would warrant an individualized bond hearing, such as in the § 1226(c) context, the burden typically remains with the detainee, as all that is required is an individualized bond hearing in accordance with 8 C.F.R. § 1236.1(c). Sopo v. U.S. Attorney General, 825 F.3d 1199, 1220 (11th Cir. 2016), *vacated on other grounds by* Sopo v. U.S. Attorney General, 890 F.3d 952 (11th Cir. 2018). This further supports the conclusion that Duncan has not been deprived of any due process in this case.

6

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Duncan's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Duncan *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Duncan's Petition, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** that the Court **DENY** Duncan leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Duncan and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of January, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA